**Leslie RHEA, d/b/a Leslie Rhea's Landscaping and Grading, Plaintiff-Appellee,**

v.

**MEADOWVIEW ELDERLY APART-MENTS, LTD., Exchange Mutual Insurance Company, et al, Defendants-Appellants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

June 12, 1984.

Application for Permission to Appeal Denied Aug. 27, 1984.

Patrick Johnson, Jr., John F. Watson, Memphis, for defendants-appellants.

T.D. Forrester, Covington, for plaintiff-appellee.

CRAWFORD, Judge.

Exchange Mutual Insurance Company (hereinafter Exchange) appeals from the order of the trial court denying a motion filed pursuant to Rule 60.02, Tennessee Rules of Civil Procedure.

This case commenced March 2, 1981, on the complaint filed by Leslie Rhea, d/b/a Leslie Rhea's Landscaping and Grading (hereinafter Rhea), a sub-contractor on a construction project, against the general contractor and Exchange, the surety on the general contractor's payment bond in the amount of $172,561.25, and other defendants. The trial court rendered judgment against the defendants, including Ex-

change, for $17,634.00 on June 1, 1981. The defendants appealed, and after reduction of the judgment by the Court of Appeals, the Supreme Court reinstated the order of the trial court and the judgment was made final on June 20, 1983. *Rhea v. Marko Construction Co.*, 652 S.W.2d 332 (Tenn.1983). The 60.02 motion involved in this appeal was filed July 5, 1983. In that motion Exchange alleges in substance that: the limit of liability of Exchange on the payment bond sued upon is $172,561.25; prior to the instigation of this suit, other suits had been filed; and this suit was consolidated with another suit which "for all intents and purposes was then treated as a general creditor's complaint and Exchange Mutual Insurance Company was ordered to pay the sum of $129,000 to the clerk and master" which was done. Exchange contends further that: it has paid out in excess of $186,937.00 under its payment bond which amount exceeds the contractual liability; because of the multiplicity of claims and suits and the consolidation thereof, Exchange by means of mistake, inadvertence or excusable neglect paid more than the contractual limits of the bond required; the mistake was not discovered until about June 15, 1983; and, in addition to the overpayment, Exchange is now obligated to Rhea because of the $17,634.00 judgment, although its liability under the payment bond has been discharged. Also Exchange asserts that Rhea made no effort to obtain any part of the funds paid into the clerk and master in the consolidated cases, and Exchange had every right and reason to rely upon Rhea so protecting himself in that cause.

Exchange avers that the judgment against it in this cause should be held void, because of inadvertence or mistake. Exchange asserts that they have satisfied the judgment by paying the limit of their bond and liability, and Rhea did nothing to protect his judgment when the trial court's order of disbursement for the consolidated cases dispersed the money previously paid by Exchange into court.

Rhea, in response to Exchange's motion, asserts that two separate and distinct bonds exist, one being a performance bond and the other being a payment bond. The total liability on each bond is $172,561.25. Although Exchange was ordered to pay the sum of $129,000.00 into the clerk and master for the consolidated cases for procedural convenience of the court, this payment did not constitute a limitation of Exchange's liability, but resulted from a consent order involving claimants who had settled or compromised their claims at that particular time. Rhea further asserts that Exchange never pled the exhaustion of its limit of liability on the bond, and the failure to so timely plead the limit of liability constitutes a waiver of Exchange's right, and he relies specifically upon Tenn.R.Civ.P. 8.03 and 12.08. Also, Rhea alleges that the limit of the liability had not been exhausted under the payment bond, and the 60.02 motion was not timely filed.

After a hearing on August 5, 1983, the court made written findings of fact and conclusions of law pursuant to Exchange's request under Rule 52.01, Tenn.R.Civ.P.

Tenn.R.Civ.P. 60.02 permits the court to relieve a party from a final judgment due to a mistake, inadvertence, surprise or excusable neglect of the moving party. *Tennessee State Bank v. Lay*, 609 S.W.2d 525 (Tenn.App.1980).

In a Rule 60.02 motion, the burden of proof is cast on the movant, and he must prove the basis on which relief is sought. *Trice v. Moyers*, 561 S.W.2d 153 (Tenn. 1978), *Hopkins v. Hopkins*, 572 S.W.2d 639 (Tenn.1978).

Since this motion was heard by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Any conflict in testimony requiring a determination of the credibility of witnesses rests in the first instance with the trial court and will be given great weight

by the appellate court, unless other real evidence compels a contrary conclusion. *See State ex rel. Balsinger v. Town of Madisonville*, 222 Tenn. 272, 282, 435 S.W.2d 803, 807 (1968); *Linder v. Little*, 490 S.W.2d 717, 723 (Tenn.App.1972).

Exchange has presented seven issues for review by this court. The first issue presented for review is:

> Did Exchange satisfy in full its obligation under its payment bond by paying its funds into the Registry of the Court and paying other creditors the full extent of its bonded obligation under its payment bond.

Obviously, this issue is the threshold issue, because Exchange would not be entitled to relief for overpayment of its bond limit until it first proved that it had in fact paid more than the contractual limits of the bond required.

Although the court, as we stated, filed extensive findings of fact and discussed several issues, we do not find it necessary to prolong this opinion by an extensive recitation of all of the findings on all of the issues. However, in connection with this threshold issue, we quote the pertinent parts from the opinion of the trial court:

> There were two bonds filed as exhibits in this cause. A Performance Bond-Dual Obligee, FHA Form No. 2452, was made by Marko Construction Company, a general partnership, as principal, and Exchange Mutual Insurance Company, a Tennessee corporation, as surety, who were bound unto Meadowview Elderly Apartments, Ltd., a limited partnership, and unto McNeill Mortgage and Investment Company, the lender, as their respective interests may appear, as obligees, is the sum of $172,561.25.
>
> A Payment Bond, FHA Form No. 2452–A, was also introduced. Under the terms of that bond, Marko Construction Company, principal, and Exchange Mutual Insurance Company, surety, were bound unto Meadowview Elderly Apartments, Ltd., as obligee, for the use and benefit of claimants as hereinafter defined, in the sum of $172,561.25. A

claimant is defined in that bond as one having a direct contract with a principal or with a sub-contractor of the principal for labor, material, or both, used or reasonably required for the use in the performance of the contract. The conditions of the obligation under the payment bond is such that if Marko Construction Company shall promptly make payment to all claimants for all labor and material used or reasonably required for the use in the performance of the contract, then the obligation shall be void; otherwise it shall remain in full force and effect. The bond further provides that the amount of the bond shall be reduced by and to the extend [sic] of any payment made in good faith hereunder, inclusive of the payment by surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

### I.

Exchange Mutual Insurance Company's motion under Rule 60.02 is predicated on the position that it has paid out in full its total bond limits. The burden of showing the basis for relief under Rule 60.02 rests upon the party moving for such relief and opposing party is not required to go forward with the evidence to assist the opponent. *Trice v. Moyers*, 561 S.W.2d 153 (Tenn.1978).

Exchange contends that in addition to the sums that it paid into the Chancery Court for Tipton County, Tennessee, it paid some $32,863.85 to Mr. John Watson as reflected in the affidavit of Mr. Robert Willey filed as an exhibit to the Motion. According to the testimony, these funds were then deposited in the operation account of Meadowview Elderly Apartments. Exchange seeks credit for this payment against its payment bond liability.

The Court finds that Exchange has failed to carry its burden of proof to show that these funds were disbursed pursuant to its payment bond. Several

of these payments were *not* to claimants as set forth and described in the payment bond (Exhibit 2) as follows:

A claimant is defined as one having a direct contact with the Principal or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of the water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract.

As reflected, money was paid to Talmac, the management company that was managing the apartment operation. Payments were made to cash. Payments were made for truck repair for vehicles owned by the general contractor. Payments were made to Mr. Patterson, one of the partners who composed Marko Construction Company, the general contractors. Payments were also made to E.H. Clark for office supplies, Colonial Office Supply Company for office supplies, Exxon Car Care for repair of a vehicle owned by the general contractor, and to employees of the general contractor. There are numerous other payments that are questionable as to whether they were to an individual who would truly be a material-mechanic lien claimant under the laws of the State of Tennessee or as defined in the payment bond (Exhibit 2).

Furthermore, the testimony of Mr. Willey established that the reason for the disbursement by Exchange Mutual to Mr. Watson was primarily to complete the construction because the project was in trouble and did not have the funds to complete its construction. The disbursement to Mr. Watson was not to pay for past creditors or lien claimants who had already done work. Any disbursement under this matter would have been a disbursement under the performance bond as opposed to the payment bond. It is difficult to determine for what purpose the $32,863.85 was used. These sums were paid directly to Mr. Watson.

He in turn endorsed them over to Meadowview, and it deposited the funds in its operation account, co-mingling the same with its other funds as admitted by Mr. Willey.

The parties herein seeking relief had interlocking relationships in this venture. Mr. Willey and Mr. Watson were the owners of Southern Consulting Corporation which owned Marko Planning, Inc., which was a partner in Marko Construction Company, the general contractor for the project. In addition thereto, Mr. Willey was the general partner in Meadowview Elderly Apartments, LTD., and Mr. John James, the agent for Exchange who executed the bond in question, was a limited partner in Meadowview Elderly Apartments, LTD.

In addition to the $32,863.85 paid directly to Mr. Watson from which Exchange has attempted to claim a credit against the payment bond, Exchange is also attempting to claim a credit in the amount of $9,922.74 as set forth in the affidavit of Mr. Martin Cohen that was attached to the original Motion. This payment was to Commercial and Industrial Bank of Memphis for construction equipment interest of Marko Construction Company, the general contractor. The Court finds that Commercial and Industrial Bank is not a mechanic or materialman lien claimant nor a claimant as described in the payment bond. The affidavit of Mr. Cohen also sets forth a payment in the amount of $2,560.65 to Memphis Sash and Door Company, $994.49 to Design Space International and $35.00 to Piedmont Airlines. However, Exchange failed to offer any proof or testimony as to the reason for these disbursements and as to whether they were disbursed under the payment bond or under the performance bond.

The Court finds that plaintiff's only knowledge of sums paid by Exchange is the $129,000.00 set forth in the Order marked Exhibit 6 which is substantially less than the bond limits. Exchange

failed to plead the same in any of the cases.

We have reviewed the record of the 60.02 hearing, and we concur in the findings of fact of the trial judge, and thus we hold that the evidence does not preponderate against the trial court's findings of fact. T.R.A.P. 13(d).

 Since Exchange failed to carry the burden of proof in its attempt to demonstrate that its payments exceeded its liability under the payment bond, Exchange failed to cross the threshold created by its issue. Accordingly, the extraordinary relief sought by Exchange of disturbing the finality of this judgment was correctly denied by the trial court. In view of our decision on the first issue presented, con-sideration of the other issues is not necessary.

The judgment of the trial court is affirmed, and this case is remanded for such further proceedings as necessary. Costs of the appeal are adjudged against the appellant.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.