IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 17, 2014 Session

## JENICA DEBOER HALL v. JEFFREY GLEN HALL

**Appeal from the Circuit Court for Bradley County**
**No. V-10-358      Lawrence Puckett, Judge**

_____

**No. E2013-01984-COA-R3-CV-FILED-AUGUST 14, 2014**

_____

This post-divorce matter presents the primary issue of whether the trial court properly calculated, for child support purposes, the obligor parent's income from self-employment. The trial court held that mortgage payments made by the obligor's business with respect to a commercial building solely owned by the obligor should not be added to the obligor's other income for the purpose of calculating child support. The obligee parent appeals that ruling to this Court. We affirm on that issue, concluding that such payments were already included in the obligor parent's income calculation. We reverse the trial court's finding concerning the obligor's income, however, due to insufficient evidence regarding the nature of the depreciation deduction taken with respect to the commercial building. We remand for further proof regarding the depreciation deduction. The obligee parent also appeals the trial court's failure to award attorney's fees. Having concluded that the trial court must reconsider its determination of the obligor's income, we also remand for the trial court to determine whether an award of attorney's fees to the obligee parent is appropriate. We conclude that this is not an appropriate case for an award of attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR, C.J., and JOHN W. MCCLARTY, J., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellant, Jenica DeBoer Hall.

Randy Sellers, Cleveland, Tennessee, for the appellee, Jeffrey Glen Hall.

## OPINION

### I. Factual and Procedural Background

Jenica DeBoer Hall ("Mother") and Jeffrey Glen Hall ("Father") were married in Kentucky in September 2001 and divorced in Tennessee in November 2010. During the marriage were born two children, who were ages seven and two at the time of the divorce. The parties had been living in Chattanooga, where Father maintained his chiropractic practice. The parties agreed upon the terms of their divorce, which included that Father would retain the commercial building titled in his name wherein his professional practice, Chattanooga Family Sports Medicine Clinic ("CFSMC"), operated. Further, he was responsible for paying the attendant mortgage indebtedness. The parties also agreed upon the provisions of a permanent parenting plan, naming Mother as the primary residential parent and awarding Father co-parenting time with the children. Under this plan, Father was ordered to pay Mother child support in the amount of $1,088.00 per month. Pursuant to the parties' marital dissolution agreement, Mother and the children relocated to Kentucky after the divorce to be near Mother's family.

In September 2011, Mother filed a petition for contempt and for modification of the permanent parenting plan. Mother alleged, *inter alia*, that Father had failed to exercise his co-parenting time with the children and had failed to fulfill his financial responsibilities initially agreed upon and ordered by the court. Mother further asserted that an increase in the amount of child support was warranted due to an improvement in Father's income. Father counter-petitioned, alleging that Mother was not allowing him the allotted co-parenting time. The parties again reached an agreement with regard to the co-parenting issues, which agreement was memorialized in a modified permanent parenting plan. That order reserved issues regarding child support for further hearing.

A hearing respecting child support was conducted on May 20, 2013. The majority of evidence introduced at the hearing addressed Father's income and expenses. The proof demonstrated that Father still owned the commercial building that housed his practice and that the respective real property was titled solely in his name. First National Bank as lender held the mortgage on this commercial property, which debt was also solely in Father's name.

Father's accountant, Deborah Collins, was questioned at length regarding the expenses of the business, including the rent and property tax expense, as well as "automobile" and telephone expenses. Ms. Collins testified that when she became Father's accountant in February 2012, she had to devote a significant amount of time to remedying problems created by Father's former bookkeeper. As the business was about to fail because Father could not afford to pay the mortgage payments on the building, Ms. Collins negotiated with the bank

and achieved a lower monthly payment amount. According to Ms. Collins, to create additional income, the business also began renting space in the building to two other professionals who in turn paid rent.

Ms. Collins presented the 2012 income and expense statement for the business, which demonstrated that the rent paid by others was treated as rental income. In lieu of paying rent to Father as owner of the building, the business paid the mortgage payments on the building directly to the lender. Ms. Collins categorized these payments as a rent expense for the company on the business's income and expense statement. Ms. Collins testified that the business likewise paid the real property taxes on the building, which were also treated as an expense of the business. According to Ms. Collins, the automobile expenses represented payments made to someone other than Father for the purpose of running business errands, such as going to the bank. Although the phone expense included both the office telephone and Father's personal cellular telephone, Father's cellular telephone was used by the business to contact Father when he was away from the office.

Following the hearing, the trial court concluded that the mortgage payments regarding the commercial building should not be considered as additional income to Father. The court established Father's annual income at $79,535.00, based on Ms. Collins's testimony. The court reserved Mother's request for an award of attorney's fees for further hearing in conjunction with post-trial motions. Mother filed a motion to amend the trial court's ruling regarding Father's income, which was denied by the court. The court failed to rule on Mother's request for attorney's fees. Father's child support was modified to $1,383.00 per month, a $295.00 increase, based upon the trial court's finding regarding his income and calculation under the applicable guidelines. Mother timely appealed.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated slightly:

1.  Whether the trial court erred in its calculation of Father's income for child support purposes.

2.  Whether the trial court erred in failing to grant Mother an award of attorney's fees at trial.

3.  Whether Mother should receive an award of attorney's fees on appeal.

## III. Standard of Review

This Court has described the proper standard of review for child support determinations as follows:

> Setting child support is a discretionary matter. Accordingly, we review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

*State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). *See also Massey v. Casals*, 315 S.W.3d 788, 798 (Tenn. Ct. App. 2009) ("We note that determinations of child support lie within the discretion of the trial court.").

## IV. Father's Income

The trial court made the following findings of fact with regard to Father's income for the purpose of setting his child support obligation amount:

> Mr. Hall's income shall be set as is shown on Exhibit No. 2 in the amount of $83,444.00, plus $6,000.00, which Mr. Hall got to deduct as depreciation on a machine that he purchased for his business, minus []15.3% self-employment tax as it relates to that portion of the $83,444.00 attributable to Ocoee Clinic[1] of $27,304.00, and $37,432.00 as it relates to C.F.S.M.C., which 15.3% thereon is $9,909.00, making his adjusted income for child support purposes $79,535.00.
>
> The Court does not include as income Mr. Hall's payments on the business building titled in his name, because he is not actually generating any kind of equity in paying these payments. The Court finds that such is a liability and not an asset.

(Paragraph numbering omitted.) Utilizing the income amount of $79,535.00 annually, the

---

[1]Ocoee Clinic is a second location of Father's practice, which operates from a rental property.

trial court, employing the child support worksheet, calculated Father's support obligation to be $1,383.00 per month.

Any rental income Father receives from this commercial property should clearly be included as income for child support purposes. *See Jennette v. Jennette*, No. 01A01-9810-CH-00549, 1999 WL 732519 at *4 (Tenn. Ct. App. Sept. 21, 1999); *Creson v. Creson*, No. 02A01-9801-CH-00002, 1999 WL 65055 at *6 (Tenn. Ct. App. Feb. 12, 1999); *Lazenby v. Lazenby*, No. 01A01-9708-GS-00432, 1998 WL 195973 at *2 (Tenn. Ct. App. Apr. 24, 1998). Pursuant to the respective definition provided in the Child Support Guidelines:

> Gross income of each parent shall be determined in the process of setting the presumptive child support order and shall include all income from any source (before deductions for taxes and other deductions such as credits for other qualified children), whether earned or unearned, and includes, but is not limited to, the following:
>
> (i) Wages;
>
> (ii) Salaries;
>
> (iii) Commissions, fees, and tips;
>
> (iv) <u>Income from self-employment</u>; . . . .

Tenn. Comp. R. & Regs., ch. 1240-02-04-.04(3)(a)(1) (emphasis added). The Guidelines provide, *inter alia*, that "[i]ncome from self-employment includes income from, but not limited to, business operations, work as an independent contractor or consultant, sales of goods or services, and <u>rental properties</u>, etc., . . . ." Tenn. Comp. R. & Regs., ch. 1240-02-04-.04(3)(a)(3)(i) (emphasis added). The Guidelines further provide, however, that "ordinary and reasonable expenses necessary to produce such income" should be deducted and that "[e]xcessive promotional, excessive travel, excessive car expenses or excessive personal expenses, or depreciation on equipment," as well as "[a]mounts allowed by the Internal Revenue Service for accelerated depreciation or investment tax credits," shall not be considered reasonable expenses. Tenn. Comp. R. & Regs., ch. 1240-02-04-.04(3)(a)(3)(ii)(I) and (II).

The evidence at trial demonstrated that in 2012, Father's business paid mortgage payments totaling $44,461.32 relative to Father's commercial building, which the business deducted as a rental expense. Further, Exhibit 2, relied upon by the trial court for establishing Father's income, showed that Ms. Collins utilized this same amount in

determining whether Father claimed an income or loss on the building for the purpose of calculating his personal income tax. On Exhibit 2, the amount of $44,461.32 is reflected as rental income to Father. In corresponding fashion, mortgage interest of $31,723.57 and depreciation of $19,611.00 are shown as deductions, thereby attributing a loss to Father with regard to the building of $6,873.57. Ms. Collins deducted this loss figure when calculating Father's total income for the year, as detailed on Exhibit 2:

| | |
|---|---|
| Income from C.F.S.M.C. | $37,432.00 |
| Loss from Jeff Hall, Inc.[2] | -1,927.00 |
| Loss from building | -6,874.00 |
| Income from W-2 | 27,509.00 |
| Income from Ocoee | 27,304.00 |
| Total | $83,444.00 |

As stated above, the trial court accepted this total, along with Ms. Collins's testimony that self-employment taxes had not yet been deducted with regard to the income from CFSMC and Ocoee. Upon deducting the respective amount of self-employment taxes and adding back $6,000.00 in equipment depreciation that Ms. Collins had deducted,[3] the trial court arrived at an amount for Father's annual income of $79,535.00.

We agree with the trial court that the mortgage payments made on Father's behalf should not have been added to this income figure.[4] These payments were already included in Ms. Collins's calculations with regard to any income or loss from the building. At trial, however, the parties failed to address whether the depreciation amount of $19,611.00 was properly deducted to create a loss regarding the building, thereby reducing Father's income. As previously explained, Ms. Collins testified that she deducted depreciation on the building, which created a respective loss of $6,873.57. As the trial court accepted those calculations, this loss was deducted from Father's income. However, Ms. Collins was not questioned regarding whether this depreciation was an amount "allowed by the Internal Revenue Service for accelerated depreciation," which, according to the Guidelines, shall not be considered a reasonable expense to be deducted from self-employment income. *See* Tenn. Comp. R. &

---

[2]Jeff Hall, Inc., appears to be a separate corporation that leases equipment and employees to CFSMC.

[3]Pursuant to Tenn. Comp. R. & Regs., ch. 1240-02-04-.04(3)(a)(3)(ii)(I), depreciation on equipment is not a reasonable expense.

[4]Although we do not agree with the trial court's stated reason for excluding the mortgage payments as income to Father, we do agree that the result is correct. *See Int'l House of Talent, Inc. v. Alabama*, 712 S.W.2d 78, 88 (Tenn. 1986); *Hopkins v. Hopkins*, 572 S.W.2d 639, 641 (Tenn. 1978).

Regs., ch. 1240-02-04-.04(3)(a)(3)(ii)(II); *see also* 26 U.S.C. § 168 (addressing depreciation generally).

Lacking the benefit of having Father's tax return or any additional proof on this issue in the record, this Court is without adequate evidentiary foundation to determine whether the depreciation on the commercial property was properly deducted from Father's income. As such, we must remand this case to the trial court to consider further evidence regarding this issue pursuant to Tennessee Code Annotated § 27-3-128, which states:

> The court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right.

Tenn. Code Ann. § 27-3-128 (2000). We therefore remand this action to the trial court for further proceedings regarding whether depreciation on Father's commercial property was properly deducted from his income. After making such determination, the trial court shall make an appropriate finding regarding Father's income for child support purposes.

Mother similarly asserts that the real property taxes paid by the business on Father's commercial building should be included as income to Father. We agree that the tax expense paid on Father's behalf by the business, which inures to his benefit, should be included as rental income on the building to Father, similar to the mortgage payments. We note, however, that this expense could also properly be deducted as an "ordinary and reasonable expense[] necessary to produce such [rental] income" in that same calculation. Tenn. Comp. R. & Regs., ch. 1240-02-04-.04(3)(a)(3)(i). *See also Lazenby*, 1998 WL 195973 at *2. Therefore, the end result would be a "wash" regarding Father's income calculation. The trial court did not err in failing to add the property taxes paid by the business to Father's income amount for child support purposes.

As to the automobile and telephone expenses Mother now seeks to dispute, there was no demonstration or argument at trial that these business expenses were unreasonable. Ms. Collins explained the nature of these expenses and established that they were legitimate expenses of the business. As no proof was introduced to the contrary, Mother did not take issue with these expenses at the trial court level. We therefore conclude that any issue regarding these expenses has been waived. *See Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991) ("issues not raised in the trial court cannot be raised for the first time on appeal.")

V. Attorney's Fees

Mother contends that the trial court erred in failing to award her attorney's fees at trial. A trial court's decision regarding whether to award attorney's fees is reviewed by this Court under an abuse of discretion standard. *See In re Estate of Greenamyre*, 219 S.W.3d 877, 885-86 (Tenn. Ct. App. 2005). In this case, however, the trial court failed to make a ruling on Mother's request for an award of attorney's fees.

Inasmuch as we are remanding this case to the trial court for further proceedings regarding Father's income, we also direct the trial court to consider the issue of whether Mother is due an award of attorney's fees for pursuing an increase in child support pursuant to relevant authority, including, *inter alia*, Tennessee Code Annotated § 36-5-103(c). *See also Massey*, 315 S.W.3d at 799 (holding that this statute gives trial courts the power to award attorney's fees in child support modification cases).

We also determine that this is not an appropriate case for an award of attorney's fees on appeal. As this Court has stated:

> [I]t is in the sole discretion of this court whether to award attorney's fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *13 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003)) (other internal citations omitted).

VI. Conclusion

For the reasons stated above, we affirm the judgment of the trial court holding that mortgage payments made by Father's business on a commercial building solely owned by Father should not be added to his income for the purpose of calculating child support. We reverse the trial court's finding with regard to Father's income, however, due to an inadequate evidentiary foundation regarding the nature of the depreciation deduction taken with regard to the commercial building. We remand for further proof relevant to the depreciation deduction and for the trial court to determine the amount of Father's income for child support purposes. We also remand for the trial court to determine whether an award of attorney's fees to Mother is appropriate. We deny Mother's request for an award of

attorney's fees on appeal.  Costs on appeal are taxed equally between the parties.


_____
THOMAS R. FRIERSON, II, JUDGE